United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE FORSTHOFF,<br>Plaintiff,<br>v.<br>CONTINENTAL CASUALTY COMPANY,<br>Defendant. | Case No. 26-cv-01884-WHO<br>**ORDER DENYING MOTION TO DISMISS**<br>Re: Dkt. Nos. 12, 18, 19 |

Plaintiff Jane Forsthoff ("Forsthoff") purchased a long-term care insurance policy from defendant Continental Casualty Company ("Continental") that she alleges included a 5% annual compound inflation protection rider. She claims that Continental altered the terms of her Policy without consent by replacing the original inflation protection rider with a fixed annual increase benefit, resulting in substantially reduced benefits. Although the Policy reads as Continental contends, it provided Forsthoff with a brochure before she purchased the Policy that describes the inflation protection rider as Forsthoff asserts. This parol evidence is potentially admissible and makes Forsthoff's causes of action plausible. Continental's motion to dismiss is DENIED.

## BACKGROUND

### 1. Factual Background

The following facts are taken from Forsthoff's complaint and are construed in her favor. Complaint ("Compl.") [Dkt. No. 1-1].

Forsthoff is a 101-year-old resident of Alameda County, California. *Id.* ¶ 5. Continental is an "Illinois corporation, located at 151 N. Franklin St, Chicago, IL 60606 and licensed to provide long term care insurance in California." *Id.* ¶ 6. In 1988, Forsthoff purchased a "Convalescent Care Plan" (the "Policy") from Continental, policy number 076276701, with an annual premium

of $863. *Id.* ¶ 15. Forsthoff alleges that when she originally purchased the Policy, Continental distributed a brochure that purported to "give [customers] details on exactly what the plan covers." *Id.* ¶¶ 16–19. One option feature of the Policy was "Inflation Protection." *Id.* ¶ 19. Page 5 of the brochure stated, "[i]f you choose this option, your original daily benefit will increase by 5% each year, even if your benefits are being paid." *Id.* ¶¶ 19–20. On the following page, however, the brochure's "Outline of Coverage" section indicated that the "Inflation Protection Benefit" would "increase [policyholders'] daily long-term care benefit by 5% yearly on the anniversary of [their] policy effective date." *Id.* ¶ 21. Forsthoff elected this option when purchasing her Policy. *Id.*

Forsthoff completed her application and purchased the Policy (part of the "P1-59433 Series") and Inflation Rider ("R1-59439-A"). *Id.* ¶ 23. The Inflation Protection Rider "contained the same language as [Continental's] brochure," which suggested that the "'Inflation Protection Increase' mean[t] an amount equal to 5% of the Long Term Benefit and stated that '[w]e will add the Inflation Protection Increases to Your Long Term Benefit on each anniversary of Your Policy Effective Date.'" *Id.* ¶ 26.

Years after Forsthoff entered her policy, the magazine Consumer Reports released an article entitled "Gotcha! The Traps in Long Term Care Insurance." *Id.* ¶ 29. The article "warned consumers that many long term care policies were inadequate and did not adequately represent their true terms." *Id.* It also "underscore[d] the importance of buying good inflation protection," and noted that "only 14 companies offered the recommended compound inflation protection," including Forsthoff's P1-59433-A plan. *Id.* ¶¶ 32–33. Continental sent a letter to Forsthoff "confirm[ing] Consumer Report's representation that the policy included the recommended compound inflation protection." *Id.* ¶ 35. The letter specifically noted that Continental was "pleased that the article ranks [it] among the top long-term care providers," and that it provided products including "inflation protection." *Id.*

At "some point in the early 2000s, [Continental] began sending Ms. Forsthoff documents that appeared to refer to an amended policy." *Id.* ¶ 36. The amended documents "no longer contained the inflation protection originally purchased." *Id.* ¶ 37. "Instead, [Continental] had replaced it with an 'Automatic Increase Benefit,' which said that the daily benefit would be

United States District Court
Northern District of California

increased by a 'fixed amount,' each year, calculated at $5.00." *Id.* Continental attached to the amended documents "an entirely different rider to the policy, called the 'Simple Automatic Increase Benefit Rider.'" *Id.* ¶ 38. That rider "contained entirely different language from the original inflation protection rider and explicitly referr[ed] to a 'fixed' increase each year." *Id.* ¶ 39. But the rider was "not filled out," and Continental did not "provide any document in which Ms. Forsthoff agreed to this charge or waived her right to 5 percent annual compound inflation." *Id.* ¶ 40. The "only evidence of any genuine amendment [by Forsthoff] was in 1991 when [she] increased her coverage, paying a higher premium in exchange for [Continental] removing its requirement that she be hospitalized before she became eligible for benefits." *Id.* ¶ 42.

In July 2019, Forsthoff moved into a residential facility in Oakland, California, where she "began receiving assisted living care associated with a dementia diagnosis." *Id.* ¶ 43. Continental "conceded that Ms. Forsthoff was entitled to daily benefit payments as of December 9, 2023." *Id.* On December 19, 2023, Continental "stated in a letter to Mr. Robert Smith, Forsthoff's guardian ad litem, an explanation of Ms. Forsthoff's benefits payment." *Id.* ¶ 45. That letter stated that Forsthoff's "inflation protection was not inflation protection of 5% annually but was, instead, a fixed increase of $5.00 each year." *Id.* ¶ 46. Continental "referred to and included a copy of the 'inflation protection' rider, but . . . calculated the daily benefit as it would be under [the] 'automatic increase benefit' rider." *Id.* ¶ 47. It has since "refused to recognize a distinction between the two riders despite the different language." *Id.* ¶ 48.

**2. Procedural History**

Forsthoff originally filed this suit in the California Superior Court in Alameda County on November 25, 2025. *See* Notice of Removal ("Rem.") [Dkt. No. 1] at 1. The complaint asserted four causes of action: (1) breach of contract; (2) breach of good faith and fair dealing; (3) violations of California's Unfair Competition Law ("UCL"); and (4) declaratory relief. Compl. ¶¶ 49–67. She seeks declaratory judgment that the "insurance policy purchased by [her] provides for 5 percent annual compound inflation protection," economic damages worth $209,949, "general damages," future special economic damages, and attorneys' fees. *Id.* Prayer for Relief ¶¶ 1–9.

On March 4, 2026, Continental removed this case to the United States District Court for

the Northern District of California, asserting diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441. *See* Rem. ¶¶ 13–26. Then it filed a motion to dismiss Forsthoff's complaint. *See* Defendant Continental Casualty Company's Notice of Motion and Motion to Dismiss ("Mot.") [Dkt. No. 12]. Forsthoff opposed. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss [Dkt. No. 17]. Continental replied. *See* Defendant Continental Casualty Company's Reply ("Repl.") [Dkt. No. 18]. I then heard oral argument.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000), *overruled on other grounds*, *Singleton v. Gates*, No. 25-743, 2026 WL 1494029 (9th Cir. May 28, 2026). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous

amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

Both parties agree that there is "no dispute that [Forsthoff] is eligible to receive benefits under the Policy." Mot. at 1. The "only dispute in this lawsuit concerns the amount of benefits to be paid" under the Policy. *Id.* Continental moves to dismiss Forsthoff's complaint on three grounds: that (1) nothing in the Rider establishes a right to compounded inflation protection, *see id.* at 10–15; (2) Continental has not acted in bad faith under the genuine dispute doctrine, *see id.* at 15–17; (3) Forsthoff fails to state a claim for declaratory relief, *id.* at 17–18, and under California's Unfair Competition Law ("UCL"), *id.* at 18–22. I address each argument below.

**I. Count One – Breach of Contract**

Count One alleges that Continental breached its Policy with Forsthoff by failing to provide a 5% compounded annual increase to her daily benefit programs. *See* Compl. ¶¶ 49–53. To plead a breach of contract claim under California law, a plaintiff must allege "(1) the [existence of a] contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal.2d 822, 830 (1968).

**A. Contract Interpretation**

As an initial matter, jurisdiction in this case is based on diversity, and neither party disputes that the construction of the Policy is governed by California law. *See Integon Nat'l Ins. Co. v. Reece*, 423 F. Supp. 3d 831, 840 (E.D. Cal. 2019). California courts interpret insurance contracts under "ordinary rules of contractual interpretation." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (quoting *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999)). The "mutual intention of the parties at the time the contract is formed governs interpretation." *Palmer*, 21 Cal. 4th at 1115 (citation omitted). Courts infer intent from the "written provisions of the insurance policy. If the policy language is clear and explicit, it governs." *Id.* (citations omitted). But an insurance contract is ambiguous if it is "susceptible of more than one reasonable interpretation." *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 322 (2010), *opinion after certified question answered sub. Nom. Minkler v. Safeco Ins. Co.*, 399 F.

App'x 230 (9th Cir. 2010) (citations omitted). Ambiguity is examined in the context of the entire contract. *Id.* If a contract term is ambiguous, it should be interpreted "to protect the objectively reasonable expectations of the insured." *Id.* at 321. An insurance policy "should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." *Crane v. State Farm Fire & Cas. Co.*, 5 Cal. 3d 112, 115 (1971).

"Because California law recognizes that the words of a written instrument often lack a clear meaning apart from the context in which the words are written, courts may preliminarily consider any extrinsic evidence offered by the parties." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 989–90 (9th Cir. 2006) (per curiam); *see also Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384 ("'[E]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible.'" (quoting *Morey v. Vannucci*, 64 Cal. App. 4th 904 (1998))). "If the court decides, after consideration of this evidence, that the language of a contract, in the light of all the circumstances, is fairly susceptible of either one of the two interpretations contended for, extrinsic evidence relevant to prove either of such meanings is admissible.'" *Miller*, 454 F.3d at 990. "If, however, the court decides that the contract is not reasonably susceptible to more than one interpretation, the court can reject the assertion of ambiguity." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1015 (9th Cir. 2012).

**B. Parties' Arguments**

The Policy indicates that Forsthoff would receive "$100.00 per day" as per of her "Long Term Care Benefit." Policy at 3. The Inflation Protection Rider then notes:

> Inflation Protection Rider
>
> In consideration of an addition premium of *the amount which is included in the premium shown in the policy schedule*, it is agreed that the following benefit is added to Your policy:
>
> Inflation Protection Benefit
>
> "Inflation Protection Increase" means an amount equal to 5% of the Long Term Care Benefit shown in Your Schedule.
>
> We will add the Inflation Protection Increase to Your Long Term Care Benefit on each anniversary of Your Policy Effective Date. Inflation

> Protection Increases will occur even if benefits are being paid.
>
> This rider takes effect and ends at the same time as the policy to which it is attached. It is subject to the definitions, limitations, and provisions of the policy which are consistent with the rider.

*Id.* at 10 (emphasis added).

Continental argues that the plain language of the Policy is clear. The Rider defines "Inflation Protection" as "an amount equal to 5% of the long term care benefit" shown in the Policy Schedule. Mot. at 10. That number is $100.00. *Id.* "Five percent of $100.00 is $5.00. Thus, the amount of benefits available under the Policy increased by exactly $5.00 (*i.e.*, 5% of $100.00) each year on the Policy anniversary." *Id.* Because "nowhere in the Policy is there a reference to compound inflation protection," Continental concludes that simple inflation is "the type of benefit [Forsthoff] elected and is presently being paid under the Policy." *Id.* at 6, 10.

Continental takes issue with Forsthoff's references to extrinsic materials in her complaint. *See id.* at 11–14. It points out that the Policy contains an integration clause, and therefore the "Four Corners Rule applies." *Id.* at 11. Even so, Continental argues that the extraneous materials Forsthoff relies on, including the Policy Brochure, "belie [her] position," as these documents note they are "not the insurance contract and only the actual policy provisions will control." *Id.* at 12 (citations omitted). The same goes for the Consumer Reports article, Continental maintains, as it is not incorporated into Forsthoff's Policy and "does not include any specific reference to [her] Policy." *Id.* at 13. Finally, Continental argues that the National Association of Insurance Commissioners ("NAIC") created model regulations that "included a requirement for insurers to offer applicants a right to purchase 5% compound inflation protection" is inapposite, as they are "not law, persuasive or binding on any insurer until a particular legislature adopts the same and makes it binding in the jurisdiction." *Id.* at 14. "NAIC models are precisely that," Continental concludes—"models." *Id.*

In response, Forsthoff argues that she "read[] the rider in its ordinary sense," and that an objective purchaser of the Policy would understand the "Long Term Care Benefit" to mean "5% [compound increases] each year, just like how inflation is calculated each year." Oppo. at 10. She also asserts that Continental "places the weight of its entire argument on the last three words of the

inflation rider's first sentence, 'in your schedule[,]'" rather than focus on the term "Long Term Care Benefit." *Id.* In her reading of the policy, Forsthoff believes that the "most reasonable understanding of [Long Term Care Benefit] is that it changes over time, and the 5% increase is calculated from the insured's *existing* 'Long Term Care Benefit' that year." *Id.* at 10–11. Even so, Forsthoff maintains that Continental's interpretation "at best . . . points out ambiguity in the policy, which must be resolved in [her] favor" at the motion to dismiss stage. *Id.* at 10.

Forsthoff also argues that the extrinsic evidence supports her view. She highlights that "[Continental's] brochure and application materials promis[ed]" that her "daily long-term care benefit [would increase] by 5% yearly on the anniversary of [her] policy effective date." *Id.* (quoting Compl. ¶ 21). This was also "consistent with the Consumer Report's article and [Continental's] follow up letter confirming that [her] policy include[d] 'compound inflation protection,'" which was also consistent with the Model Regulations' requirement that benefits be "compounded annually at a rate not less five percent (5%).'" *Id.* (quoting Compl. ¶¶ 13, 34). Finally, she asserts that her interpretation is "consistent with California Insurance Code § 10237.1's requirement that the policy include compound inflation at 5%." *Id.* (quoting Cal. Ins. Code § 10237.1 ("No insurer may deliver or issue for delivery a long-term care insurance policy or certificate in this state unless the insurer offers to each policyholder . . . an inflation protection feature which (a) [i]ncreases benefit levels annually in a manner so that the increases are compounded annually at a rate of not less than 5 percent.").

**C. Analysis**

I start with the "plain meaning" of the Policy. *See California Pac. Homes, Inc. v. Scottsdale Ins. Co.*, 70 Cal. App. 4th 1187, 1191–92 (1999). The text of the Policy governs if it is "clear and explicit" and "does not involve an absurdity." *See* Cal. Civ. Code § 1638. "In analyzing the text, courts are to consider the context of the contract as a whole and should not make 'a fortress out of the dictionary.'" *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495, 507 (N.D. Cal. 2021) (quoting *Russian Hill Improvement Ass'n v. Board of Permit Appeals*, 66 Cal. 2d 34, 42 (1967) (internal citation and quotation omitted)).

The Inflation Protection Rider states that Continental would "add the Inflation Protection

Increase to Your Long Term Care Benefit on each anniversary of Your Policy Effective Date." Mot. Ex. B (Policy) at 11. The Rider then defines "Inflation Protection Increase" as "an amount equal to 5% of the Long Term Care Benefit shown in Your Schedule." *Id.* That number is $100.00 per day. *See id.* at 4. That supports Continental's interpretation that the Policy provides an increase of up to 5% each year to the defined "Long Term Care Benefit"—here, $100.00.

Forsthoff's interpretation is also plausible: it is reasonable to read the term "Long Term Care Benefit" to change over time, with the 5% increase compounding on previous years' totals. Oppo. at 10–11. To support that reading, Forsthoff points to extrinsic evidence. Fundamentally, she points to the 1988 promotional brochure from Continental that she read prior to purchasing the Policy. It states that the insured's "original daily benefit will increase by 5% each year" if they selected the "Inflation Protection" policy. Compl. ¶¶ 16–19. She alleges that she relied on this description of the inflation protection rider when interpreting and ultimately entering into the Policy. While Continental is correct that the brochure indicates that it was "not the insurance contract and only the actual policy provisions control," and instructs the reader to "read . . . [their] policy carefully," *see* Brochure at 6, 12, a reasonable policyholder could plausibly construe this language to suggest the Policy was meant to provide compounded inflation protection.[1]

The brochure, when read with the Policy, creates an ambiguity in how a layman would read and understand the Policy. "In contrast to many other states, California has a liberal parol evidence rule: It permits consideration of extrinsic evidence to explain the meaning of the terms of a contract even when the meaning appears unambiguous." *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001). At the motion to dismiss stage, courts "must consider the sufficiency of the [plaintiff's] allegations, including any parol evidence allegations, to determine whether the contract is reasonably susceptible to [her] alleged interpretation." *George v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 1112 (2011). Forsthoff's interpretation is objectively reasonable for an insured.

[1] The other extrinsic evidence on which Forsthoff relies, the 1991 Consumer Reports article and the California Insurance Code and model regulations, do not help her because she did not rely on them prior to entering into the Policy with Continental.

United States District Court
Northern District of California

The brochure plausibly supports Forsthoff's interpretation of the Policy. Forsthoff has stated a claim for breach of contract under California law that may proceed. Continental's motion to dismiss is DENIED.

**II. Count Two – Breach of Good Faith and Fair Dealing**

Forsthoff's second cause of action alleges that Continental breached its implied covenant of good faith and fair dealing. In California, there is "an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000). The covenant is implied "to prevent a contracting party from engaging in conduct which (which not technically transgressing the express covenant) frustrates the other party's rights to the benefits of the contract." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999). Accordingly, a "breach of a specific provision of the contract is not a necessary prerequisite" to a claim for a breach of an implied covenant. *Marsu*, 185 F.3d at 937. To plead a claim for a breach of the covenant of good faith and fair dealing, a plaintiff must show "(1) the parties entered into a contract; (2) the plaintiff fulfilled [their] obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).

"Insurance contracts are unique in nature and purpose." *Prog. W. Ins. Co. v. Superior Court*, 135 Cal. App. 4th 263, 277 (internal citation omitted). "An insured does not enter an insurance contract seeking profit, but instead seeks security and peace of mind through protection against calamity." *Id.* "Because peace of mind and security are the principal benefits for the insured, the courts have imposed special obligations, consonant with these special purposes, seeking to encourage insurers promptly to process and pay claims." *Id.* "Thus, an insurer must investigate claims thoroughly; it may not deny coverage based on either unduly restrictive policy interpretations or standards known to be improper; it may not unreasonably delay in processing or paying claims." *Id.* (internal citations omitted).

Continental argues that Forsthoff's breach of good faith and fair dealing claim must be dismissed because it "afforded her precisely the 5% simple inflation protection she bought and paid for." Mot. at 16. But as indicated above, Forsthoff has sufficiently pleaded a breach of contract claim under California law at this stage. I therefore decline to dismiss Forsthoff's breach of good faith and fair dealing claim solely based on the breach of contract claim.

Continental contends that "it would still be appropriate for the Court to dismiss [Forsthoff's] bad faith claim as a matter of law under the 'genuine dispute doctrine'" should her breach of contract claim survive. *Id.* The genuine dispute doctrine "holds that an insurer does not act in bad faith when it mistakenly withholds policy benefits, if the mistake is reasonable or is based on a legitimate dispute as to the insurer's liability." *Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949 (2006), *as modified on denial of reh'g* (June 16, 2006) (citations omitted); *see Fadeeff v. State Farm Gen Ins. Co.*, 50 Cal. App. 5th 94, 101 (2020), *as modified on denial of reh'g* (July 1, 2020) ("As a close corollary of that principle [of the covenant of good faith and fair dealing], it has been said that 'an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with the insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.'") (quoting *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001), *as modified on denial of reh'g* (July 30, 2001)). "[T]he reasonableness of the insurer's decision to deny benefits must be evaluated as of the time it was made." *Century Sur. Co.*, 139 Cal. App. 4th at 956.

Continental points to *Dym v. Provident Life and Accident Insurance Company*, 19 F. Supp. 2d 1147 (S.D. Cal. 1998). Repl. at 12. In *Dym*, the court recognized in a similar insurance dispute at summary judgment that "plaintiff has failed to demonstrate the existence of a genuine issue of fact as to whether [defendant] acted in bad faith." 19 F. Supp. 2d at 1151. The court also noted that even if the defendant insurer erred in denying plaintiff benefits, "this error was not based on a mistake regarding the *facts* . . . but rather a mistake as to how [the law in dispute] should be interpreted." *Id.* Because the court found as a "matter of law [that defendant's] interpretation of the [law in dispute] was reasonable," it ultimately concluded that no bad faith claim existed. *Id.*

Continental urges me to analogize to *Dym* and conclude that its policy interpretation was "reasonable as a matter of law and cannot support Plaintiff's claim of bad faith." Repl. at 12.

But for the brochure, I would agree. But "[a]s with all bad faith claims, the pivotal concern is whether the insurer acted unreasonably or without proper cause in its handling of the claim." *Sekera v. Allstate Ins. Co.*, 763 F. App'x 629, 631 (9th Cir. 2019) (citations omitted). Because this is a fact-intensive inquiry, I can only apply the genuine dispute doctrine at summary judgment, not at the motion to dismiss stage. Oppo. at 15–16 (citing *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 724 (2006) (noting that the genuine dispute doctrine applies "only where the summary judgment record demonstrates the absence of triable issues as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith."); *Trident Soc'y, Inc. v. Illinois Nat'l Ins. Co.*, No. 19CV1608 DMS (BLM), 2020 WL 6561485, at *3 (S.D. Cal. Nov. 9, 2020) (a motion to dismiss "is not the proper vehicle in which to raise the genuine dispute doctrine"); *see also Parker v. Geico Cas. Co.*, No. 2:24-cv-02396-CDS-MDC, 2025 WL 2320688, at *3 (D. Nev. Aug. 12, 2025) (same); *Malso v. Ameriprise Auto & Home Ins.*, 227 Cal. App. 4th 626, 636 (2014) (same).

*Dym* was decided at summary judgment, not on a motion to dismiss. While Continental argues that the reasoning of *Dym* suggests that its interpretation of the policy can survive as a matter of law, numerous courts identified above have found otherwise. In this case, this question is best fit for summary judgment. I DENY Continental's request to dismiss this claim now.

**III. COUNT III – CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**

Forsthoff's third cause of action alleges violations of California's Unfair Competition Law ("UCL"), which prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability" and must be analyzed independently. *Kearns*, 567 F.3d at 1127. Forsthoff's complaint alleges violations of all three prongs of the statute.

Forsthoff pleads all three prongs of the UCL. *See* Compl. ¶ 62. She maintains that Continental engaged in numerous "acts and practices" that constituted violations of the UCL, including:

> a. Defendant misrepresenting to consumers the inclusion or exclusion of inflation protection in their long term care plans;
>
> b. Defendant misrepresenting to consumers the extent to which the 5% inflation protection would compound annually;
>
> c. Defendant attempting to remove inflation protection from insureds' plans without agreement;
>
> d. Defendant attempting to convince consumers that their inflation protection policies were, in effect, the same as their "Simple Automatic Increase Benefit Rider."

*Id.*

Continental moves to dismiss Forsthoff's UCL claim in three grounds: (1) Forsthoff lacks standing because she has not pleaded a lack of an adequate remedy at law; (2) nothing about the Rider is untrue, as Forsthoff was provided the benefits the Rider said it would give; and (3) nothing about the Rider was misleading advertising to consumers. Because I find that her interpretation is plausible, until discovery is complete it is unclear whether Continental's defenses to the UCL claim have merit. At this stage, the motion to dismiss is denied.

## IV. DECLARATORY RELIEF

Forsthoff's fourth cause of action seeks declaratory relief against all defendants, specifically that "(a): the insurance policy issued to Plaintiff provides for 5 percent annual compound inflation protection and (b): that Defendant is liable for past underpayments and must recalculate Plaintiff's daily benefits going forward for the remainder of the policy." Compl. ¶¶ 65–67. To assert a claim for declaratory relief under California law, a plaintiff "must demonstrate: (1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to the rights or obligations of a party." *Brownfield v. Daniel Freeman Marina Hospital*, 208 Cal. App. 3d 405, 410 (1989) (citing *City of Tiburon v. Nw. Pac. R.R. Co.*, 4 Cal. App. 3d 160, 170 (1970)). Declaratory relief is appropriate when (1) "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "it will terminate and afford relief from the uncertainty . . . giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) (citations omitted).

This cause of action does not seem to serve a useful purpose given that the breach of contract cause of action should settle the legal relations in issue. It will be dismissed.

United States District Court
Northern District of California

## CONCLUSION

For the foregoing reasons, Continental's motion to dismiss is DENIED except that the declaratory relief cause of action is dismissed without prejudice because it is duplicative of the breach of contract cause of action.

**IT IS SO ORDERED.**

Dated: August 10, 2026

William H. Orrick
United States District Judge